**Larry E. CUSTER, Appellant–
Defendant Below,**

v.

**STATE of Indiana, Appellee–
Plaintiff Below.**

No. 02A03–9312–CR–426.

Court of Appeals of Indiana,
Third District.

June 30, 1994.

Steven J. Glaser, Fort Wayne, for appellant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Larry Custer was convicted after a bench

trial of operating a vehicle while intoxicated [1] and driving while his license was suspended,[2] both of which are class A misdemeanors. He raises four issues on appeal which we consolidate into one and restate as follows: whether the evidence is sufficient to support his convictions.

We affirm.

■ Our test for sufficiency of the evidence requires that we neither weigh the evidence nor resolve questions of credibility. We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the judgment. *Jones v. State* (1992), Ind., 589 N.E.2d 241, 242.

The facts most favorable to the judgment reveal that, while on patrol on the evening of February 20, 1993, police officer David Gladieux received a report over his radio that a vehicle was traveling southbound in the northbound lane of State Road 3, near Gladieux's location. As he was proceeding toward the reported location, Officer Gladieux observed a vehicle matching the description given over the radio parked along the side of the highway. Further investigation revealed that the vehicle's engine and heater were running, and that Custer was in the driver's seat, asleep. Custer was the sole occupant of the vehicle. As Officer Gladieux aroused Custer, he noticed a strong odor of alcohol. Once he was awake, Custer's speech was quite slurred, and he was unable to walk without assistance. Custer later failed two field sobriety tests, and a chemical breath test revealed that his blood alcohol content (BAC) was .21%. A computer check revealed that Custer's driver's license had been suspended.

■ Custer first contends there is no evidence that he was "operating" a vehicle, a required element of both of the offenses of which he was convicted.[3] Where a person is found sleeping in a motionless vehicle with the engine running, this court has required that there be some direct or circumstantial evidence to show that the defendant operated the vehicle. *Hiegel v. State* (1989), Ind.App., 538 N.E.2d 265, *trans. denied.* One "operates" a vehicle if he drives it or is in actual physical control of it upon a highway. *Mordacq v. State* (1992), Ind.App., 585 N.E.2d 22, 23. Whether a defendant has "operated" the vehicle is a question of fact to be determined by examining the surrounding circumstances. *Id.*

■ A review of the cases addressing this issue reveals the substantial import of the vehicle's location at the time it is discovered. For example, defendants have been held to be operating the vehicle when they are found at the wheel, the engine is running, and the vehicle is positioned as follows: (1) in a lane of traffic on a country road, *Traxler v. State* (1989), Ind.App., 538 N.E.2d 268; (2) in a snowbank on the median of an interstate highway, *Garland v. State* (1983), Ind.App., 452 N.E.2d 1021; and (3) on the median strip of a four lane highway, *Bowlin v. State* (1975), 164 Ind.App. 693, 330 N.E.2d 353, *reh. denied.*

Conversely, in *Hiegel, supra,* this court reversed a conviction for operating a vehicle while intoxicated where the defendant was discovered asleep in a vehicle in the parking lot of a tavern. The evidence was also deemed insufficient in *Clark v. State* (1993), Ind.App., 611 N.E.2d 181, *trans. denied,* where the defendant was found asleep in a vehicle parked at an apartment complex, even though the front end of the vehicle protruded into the roadway. Finally, in *Mordacq, supra,* a defendant's conviction was reversed where she was discovered asleep in a vehicle that was parked along a city street.

In contrast to the facts in *Hiegel* and *Clark,* Custer was not discovered in a parking lot; rather, he was found along the side

---

1. IND.CODE 9–30–5–2 (1993).

2. IND.CODE 9–24–18–5 (1993).

3. IC 9–30–5–2 states that "a person who *operates* a vehicle while intoxicated commits a Class A misdemeanor." IC 9–24–18–5(b) provides that "a person [who] *operates* a motor vehicle upon a highway while the person's driving privilege, license, or permit is suspended or revoked; and the person's suspension or revocation was a result of the person's conviction of an offense ... commits a Class A misdemeanor." (Emphasis added).

of a four-lane highway. The facts in *Mordacq* are also distinguishable. There, the defendant was convicted of operating a vehicle with at least .10% blood alcohol content, a class C misdemeanor.[4] After noting that there was no evidence that Mordacq's car was stopped in the travel portion of the roadway, the court held that "the evidence was insufficient to prove a violation of I.C. 9-30-5-1 *occurring when [the police officer] came upon the sleeping Mordacq.*" *Mordacq, supra,* at 24 (emphasis added). The court's inquiry did not end there, however: "We turn now to the question of whether the evidence was sufficient in regard to Mordacq's admission of having driven to 7th St. some hours before [the officer] investigated her parked car." *Id.* Thus, the court determined that the sufficiency of the evidence had to be analyzed both at the time that Mordacq was discovered by the officer, and *before* she was discovered. Eventually, the evidence was deemed insufficient to support the conclusion that Mordacq had been driving with a blood alcohol content of at least .10% before she was discovered by the officer because the State failed to establish that the chemical breath test was performed within three hours of Mordacq's driving of the vehicle.[5] *Mordacq, supra,* at 25.

The case at bar differs from *Mordacq* in several respects. First, parking along the side of a city street, an area normally used for such a purpose, is distinguishable from stopping along the side of a highway, an area that is used only for emergencies. Too, the radio report to which Officer Gladieux responded constitutes additional evidence that Custer had been driving the vehicle shortly before he was discovered on the side of the highway sleeping. Thus, even if we were to assume that the evidence is insufficient to establish that Custer was operating the vehicle at the time he was discovered by Officer Gladieux, there is sufficient evidence to show that Custer had been driving the vehicle shortly before such discovery.

Finally, in challenging the sufficiency of the evidence Custer points to the testimony of Nina Knafel. Knafel testified at trial that she drove the vehicle on the evening of February 20, 1993, that she parked it on the side of the highway after she and Custer had an argument, and that she left the scene on foot, leaving Custer alone in the vehicle. Custer then testified that he got into the driver's seat in order start the heater.

Essentially, Custer is inviting us to reweigh the evidence. This we will not do. As the trier of fact, the court was able to judge the credibility of Knafel and Custer's testimony, and was free to disbelieve them. The evidence most favorable to the judgment is sufficient to support Custer's convictions.

Affirmed.

HOFFMAN and SHARPNACK, JJ., concur.

---

4. IND.CODE 9-30-5-1 (1993).

5. Custer also challenges the trial court's admission into evidence of the results of his chemical breath test because, as was the case in *Mordacq,* the State failed to show that the test was administered within three hours of operation of the vehicle as required by IND.CODE 9-30-6-2 (1993) and IND.CODE 9-30-6-15 (1993). Custer's argument fails in two respects. First, Custer was not convicted, as Mordacq was, of operating a vehicle with a blood alcohol content of at least .10%. Thus, the results of his chemical analysis was not necessary to sustain a conviction. Moreover, unlike in *Mordacq,* here there was additional evidence presented to support Custer's conviction. Specifically, officers testified that Custer had slurred speech, was unable to walk without assistance, and that he failed two field sobriety tests. The evidence also established that this occurred shortly after Custer's vehicle was seen traveling down the wrong side of the highway. Inasmuch as reversible error cannot be predicated upon the trial court's admission of evidence which is merely cumulative, we find no reversible error here. *See English v. State* (1992), Ind.App., 603 N.E.2d 161, 164, *reh. denied.*